UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DALEN PRODUCTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:07-CV-179 |
| ) | (VARLAN/GUYTON) |
| V. ) | |
| ) | |
| HARBOR FREIGHT TOOLS, USA, et al., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and the order of the District Court [Doc. 75] referring Plaintiff's Motion to Preclude Jeffrey Bialosky from Offering Expert Testimony [Doc. 69] and Defendant's Motion to Strike Expert Report on Damages and Preclude E. Neal Caldwell from Testifying on Damages [Doc. 71] to this Court for disposition. The Court held a hearing to address the motion on July 8, 2010. Attorney Michael Bradford was present representing the Plaintiff, and Attorneys George Legg and Trent Dickey were present representing the Defendant. After the hearing the Court took the matter under advisement, and the motion is now ripe for adjudication.

**I.    BACKGROUND**

This is an action for infringement of a copyright. Both parties produce plastic sculptures of owls that are often used to rid buildings or portions of property of the nuisance of the wildlife by frightening the wildlife, such as birds and rodents. The parties also assert that their owls are used extensively for indoor and outdoor decoration and for events like Halloween. [Doc. 72-1 and Doc. 70-2].

The Plaintiff is the sole owner of all copyrights in a three-dimensional sculpture entitled "Great Horned Owl," also known as "the Dalen Owl." [Doc. 15 at ¶ 12]. The Plaintiff alleges that the Defendants have manufactured, reproduced, publicly displayed, sold, and distributed a product known as, "Harold Hoot." [Doc. 15 at ¶ 13]. The Plaintiff alleges that Harold Hoot is a copy and/or a derivative work of the Dalen Owl and that Harold Hoot incorporates substantial portions of the Dalen Owl.

## II.     APPLICABLE LAW: ADMISSIBILITY OF EXPERT TESTIMONY

The parties each challenge the admissibility of the opposing party's expert testimony under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The trial judge must act as a gatekeeper, admitting only that expert testimony that is relevant and reliable. Daubert, 509 U.S. at 589. With regard to scientific knowledge, the trial court must initially determine whether the reasoning or methodology used is scientifically valid and is properly applied to the facts at issue in the trial. Id. To aid the trial court in this gatekeeping role, the Supreme Court has listed several key considerations: (1) whether the scientific knowledge can or has been tested; (2) whether the given theory or technique has been published or been the subject of peer review; (3) whether a known error rate exists; and (4) whether the theory enjoys general

acceptance in the particular field. Id. at 592-94. The Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595. "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311 (9th Cir. 1995).

Although Daubert centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 (1999); Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994). The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. The trial judge enjoys broad discretion in determining whether the factors listed in Daubert reasonably measure reliability in a given case. Id. at 153. The party proffering the expert testimony bears the burden of showing its admissibility under Rule 702 by a preponderance of the evidence. Daubert, 509 U.S. at 592 n. 10.

The Plaintiff also replies on the non-expert opinion rule found in Federal Rule of Evidence 701:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

With this framework in mind, the Court will now address the instant motions.

## III. ANALYSIS

Both of the motions now before the Court challenge expert testimony offered pursuant to 17 U.S.C. § 504. Section 504 supplies the remedies for copyright infringement and outlines what damages and profits may be awarded to the entity whose copyright was infringed upon. The testimony at issue relates to subsection (b) of Section 504, which instructs:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. §504(b).

### A. Plaintiff's Motion to Preclude Jeffrey Bialosky from Offering Expert Testimony [Doc. 69]

Jeffrey Bialosky is currently the executive Vice President of Sales and Marketing and former Senior Vice President of Product Development for The Russ Berrie Gift Company ("Russ Berrie"), a company which specializes in seasonal and everyday plush toys and other gift products. [Doc. 70-2 at 2]; see www.RussBerrie.com, "About," accessed July 27, 2010. Mr. Bialosky has thirty years of experience in marketing and product development. In addition to working for Russ Berrie, Mr. Bialosky worked for a toy and novelty company for approximately a decade and for his family's teddy bear business. [Doc. 70-2 at 4].

As an initial matter, the Defendant at the hearing stipulated that Mr. Bialosky will not testify on the issue of infringement. Therefore, he is barred as to that issue.

4

Mr. Bialosky describes his expected testimony as an "expert opinion related to the portion of sales that may be attributable to the unique features and or expressions of the Harold Hoot . . . ." [Doc. 70-2 at 2]. Mr. Bialosky's expert opinion can be divided into two components: the animation component and the component discussing whimsy. Overall, Mr. Bialosky opines, based upon consideration of both of these components, that eighty percent of Harold Hoot's gross sales are attributable to its "unique features."

In regards to the animation component, Mr. Bialosky opines:

> I would estimate based on my experience, product knowledge and historical sales figures that the percentage of incremental dollars generated by adding the animated feature, attractive packaging and retail distribution [to Harold Hoot] would be significant. The addition of those animated, electronic features has attributed to substantially increased sales. I would estimate that adding these functions accounts for as much as a 40 times increase in sales volume that would have been seen, if the same item had no animated features. For example, Russ Berrie's average plush product generates $10k annually. The Russ animated versions average well over $150k in annual revenue.

[Doc. 70-2 at 3].

The second portion of Mr. Bialosky's opinion addresses the whimsical characteristics of Harold Hoot. In this portion, Mr. Bialosky lists a number of Harold Hoot's features including the use of white paint around the eyes, the bird's smaller size, the hole in the top of the bird for hanging, and the packaging. Mr. Bialosky then opines, "These design differences are significant and in my opinion should result in a more diversified and successful product at retail for [Harold Hoot]."

Thereafter, Mr. Bialosky summarizes, "Based on all of the above, I would estimate that no less than 80% of the gross sales of [Harold Hoot] would be accountable to its unique features,

5

including the motion activated sound and light, it's [sic] compact size, easy ability to be hung through the hole on it's [sic] head, colorful packaging and retail distribution." [Doc. 70-2 at 3].

In its Motion to Preclude, the Plaintiff argues that: Mr. Bialosky is not qualified to offer opinions regarding profit apportionment; Mr. Bialosky's opinion regarding profit apportionment is not relevant to this case; Mr. Bialosky's analysis is not supported by facts or data; and Mr. Bialosky's methodology is not reliable. [Doc. 69].

The Defendant responds that "it is hard to imagine a more qualified expert on apportionment," and reviews Mr. Bialosky's experience in sales of impulse gifts and other products. [Doc. 83 at 4]. The Defendant maintains that "Mr. Bialosky has engaged in sound principles in reaching his conclusions." [Doc. 83 at 4]. The Defendant cites Mr. Bialosky's experience in the gift and novelty industry as the basis for his opinions. [Doc. 83 at 4-5].

Having reviewed Mr. Bialosky's report and the parties' filings in regards to Mr. Bialosky and after being presented with the parties' positions at the hearing in this matter, the Court finds as follows.

*1.   Qualification*

With regard to qualification, the Court finds itself in a situation, which is not unfamiliar to courts, wherein the Court must determine how closely aligned an expert's real-world experience could come to the issues presented in a case. See, e.g., Ty Inc. v. Publications Intern., Ltd., 2004 WL 5025744, at *4 n. 1 (N.D. Ill. June 30, 2004 ) (explaining "it is difficult to comprehend how any expert could acquire significant experience in determining 'what profits are driven by the use of photographs'" because "people usually try to avoid such *post facto* determinations"). In this case, it is difficult to comprehend that many persons have developed expertise in determining the profits

attributable to unique features of plastic owl sculptures meant for pest control, holiday use, decoration, and/or novelty.

Moreover, Mr. Bialosky couches his opinions in the form of "estimates." He speaks in terms of a range of sales: ". . . no less than 80% of the gross sales . . . ."

Mr. Bialosky certainly has experience in sales of plush animals, gifts, and other impulse or novelty items, but the issue before the Court is whether Mr. Bialosky's experience is sufficiently analogous to experience in the owl sculpture industry, so as to qualify him to testify on profit apportionment. The Defendant is adamant that its product, Harold Hoot, is an impulse item, i.e. a gift, a novelty. But at the hearing, the Plaintiff was equally adamant that the products at issue are primarily pest control devices, which also have decorative uses.

The Court finds that Mr. Bialosky meets the threshold level of qualification to give opinion testimony regarding profits within the owl sculpture business. He may be able to assist the jury with relevant testimony. Vigorous cross-examination will allow the jury, and the Court, to determine what weight, if any, to give Mr. Bialosky's testimony.

2. *Relevancy and Methodology*

The Plaintiff also challenges the relevancy and methodology employed by Mr. Bialosky in reaching his opinions. The Court finds that these two challenges to Mr. Bialosky's testimony are related and should be addressed together.

First, the Court finds that any testimony given by Mr. Bialosky in this case shall be based upon a review of sales numbers for the products at issue, which counsel have represented have already been exchanged. However, the Court finds that the Plaintiff's challenge to Mr. Bialosky's use of gross sales figures is not well-taken. Section 504 states that the copyright owner, in this case

the Plaintiff, is required to produce proof of the infringer's gross revenue. Thereafter, the alleged infringer, in this case the Defendant, is to prove his deductible expenses or "elements of profit attributable to other factors other than the copyrighted work." Mr. Bialosky does not purport to be supplying sales figures, which is the Plaintiff's task, but rather he is opining about what other factors would contribute to sales, and thus, profits. The statute is meant to set up a format for deduction, which Mr. Bialosky's opinion complies with by attempting to identify what other factors produced sales of Harold Hoot.

Nonetheless, Mr. Bialosky will be excluded from testifying as to his estimate that the animated features account for "as much as a 40 times increase in sales volume." This opinion is problematic in a number of ways. First, Mr. Bialosky himself describes this number as an estimate. In addition, the only principle he sights in support of the estimate is an example that his company's non-animated plush products generate $10,000 annually, while animated versions generate well over $150,000. Thus, Mr. Bialosky's experience purportedly demonstrates that animation produces a 1500% increase in sales, but in contrast, he is presenting an opinion that the animation in this case produced a 4000% increase in sales, without further explanation. This estimate in no way reflects what Mr. Bialosky purports to have found in his experience. Mr. Bialosky may opine that animation will increase sales, but he may not add numbers such as "40 times" which have no basis in fact or his experience.

In sum, the Plaintiff's Motion to Exclude **[Doc. 69]** will be **GRANTED IN PART** and **DENIED IN PART**. The Court finds Mr. Bialosky is qualified to testify as an expert in this case, and he will be allowed to testify as an expert. However, Mr. Bialosky is barred from offering any testimony on infringement. Further, he will base any opinions about the sales or profits of these owl

8

sculptures upon the sales numbers for these products. Finally, he may testify regarding the ability of animation to increase sales, but he will not include figures such as "40 times," absent additional concrete support for such "estimates."

**B.    Defendant's Motion to Strike Expert Report on Damages and Preclude E. Neal Caldwell from Testifying on Damages [Doc. 71]**

E. Neal Caldwell worked as a physicist before establishing the Plaintiff corporation in 1975. Thus, Mr. Caldwell has over thirty-five years of experience in lawn and garden products and their retail distribution. Mr. Caldwell worked with Pamela Rickman, an artist, to develop the Dalen Owl in 1990, and he has over twenty years of experience marketing it. Mr. Caldwell reports that the Dalen Owl is a best seller within the owl sculpture niche. He adds that he has extensive experience in marketing the owl for decoration. [See Doc. 72-1 at 4].

In his report [Doc. 72-1], Mr. Caldwell reviews his education and his experience developing pest repellent sculptures. Mr. Caldwell explains his work developing the Dalen Owl, and thereafter, he disputes the opinions of Mr. Bialosky. Mr. Caldwell states that the Dalen Owl has been used for a variety of purposes over its twenty-five year history. Mr. Caldwell discusses his hobby of collecting owls and his knowledge of owl figurines. He then opines that the Dalen Owl's success has been based upon its attractiveness. Mr. Caldwell opines that "at least 80% of the revenue from sales of the Harold Hoot product is attributable to the unique owl design taken from Dalen's owl." Mr. Caldwell concludes by stating that both owls are pest repellers, novelties, and decorations. [Doc. 72-1 at 4-5].

In its Motion to Strike, the Defendant moves to preclude Mr. Caldwell from testifying as an expert on damages, specifically, profit apportionment. The Defendant's arguments are similar to those lodged by the Plaintiff against Mr. Bialosky. The Defendant maintains that Mr. Caldwell is

9

not qualified as an expert on apportionment and that his report is based upon conjecture, i.e. it is not reliable. The Defendant also argues that allowing Mr. Caldwell to testify would be prejudicial because of his bias in favor of the Plaintiff. [Doc. 71].

The Plaintiff maintains that Mr. Caldwell's testimony is submitted to "rebut [Mr.] Bialosky's unsubstantiated assertions." [Doc. 82 at 2]. The Plaintiff argues that Mr. Caldwell's opinion is based upon actual experience with the products at issue in this case and that Mr. Caldwell's testimony on the subject is more reliable than Mr. Bialosky's testimony.

Having reviewed Mr. Caldwell's expert report on damages and the parties' filings in regards to Mr. Caldwell's damages testimony and after being presented with the parties' positions at the hearing in this matter, the Court finds as follows.

As discussed above, under 17 U.S.C. § 504, a copyright owner is to present "proof only of the infringer's gross revenue," and thereafter, the alleged infringer must "prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." In this case, the Plaintiff may attempt to rebut the Defendant's evidence of profit attribution. The Court finds that Mr. Caldwell is qualified to testify as an expert on the owl sculpture market, and the Court will allow Mr. Caldwell to rebut Mr. Bialosky's opinion regarding percentage of sales with his own opinion regarding the percentage of sales attributable to design features that are alleged to have been infringed upon. Both Mr. Caldwell and Mr. Bialosky's opinions draw upon their industry experience, and they are equally qualified to opine on this percentage. The Defendant's challenges to Mr. Caldewell's testimony may be made in the form of rigorous cross-examination, and the jury and the Court may determine what weight, if any, to give to his testimony.

Finally, the Court will allow Mr. Caldwell to testify that, in his expert opinion, both of the owl sculptures are sold and used as pest repellers, novelties, and decorations. The Court finds that this testimony relates to and may rebut the unique characteristics testimony given by Mr. Bialosky, and the Court finds that it may aid the jury. As is the case with Mr. Bialosky, Mr. Caldwell shall base any opinions regarding sales upon the sales numbers for these products, as exchanged amongst counsel.

Thus, the Defendant's Motion to Strike **[Doc. 71]** is not well-taken, and therefore, it will be **DENIED**.

IV. **CONCLUSION**

Based upon the foregoing, the Plaintiff's Motion to Exclude **[Doc. 69]** is **GRANTED IN PART** and **DENIED IN PART**, and the Defendant's Motion to Strike **[Doc. 71]** is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

 s/ H. Bruce Guyton 
United States Magistrate Judge